UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| TIMOTHY CHARLES CARLSON,<br><br>        Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | No. CV 13-03419-VBK<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>(Social Security Case) |

    This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

    Plaintiff raises the following issues:

    1.    Whether the Administrative Law Judge ("ALJ") properly

        evaluated Plaintiff's credibility;

   2.   Whether the ALJ properly evaluated Dr. Vicary's opinions; and

   3.   Whether the ALJ properly evaluated Plaintiff's residual functional capacity.

(JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

## I

### THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY

After a hearing (AR 70-106),[1] the ALJ determined, that Plaintiff has severe impairments of cardiovascular disorder; diabetes; hypertension; depression disorder; and anxiety disorder. (AR 50.) None of these impairments meet any of the Listings. (Id.)

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work with restrictions which include occasional stooping, kneeling, crouching and crawling; no climbing of ladders/ropes/scaffolds; and occasional interaction with others. (AR 52.)

The ALJ also evaluated Plaintiff's credibility, noting that he testified that he experienced "depression, crying spells, anxiety,

---

[1] The hearing was originally held on November 3, 2010, at which time Plaintiff's counsel appeared, but Plaintiff did not. The ALJ continued the hearing to March 9, 2011, at which time Plaintiff was represented by the same counsel, appeared and testified, and testimony was also taken from a vocational expert ("VE").

panic attacks, social isolation, nervousness around others, and poor concentration." (AR 52.) Plaintiff's Function Report indicated no difficulty attending to personal self care needs, and as far as activities of daily living ("ADL"), Plaintiff is able to prepare meals; perform household chores such as cleaning, laundry, and ironing; and shop for groceries and clothing on a weekly basis. He drives a vehicle on his own, and participates in social activities which include fishing, talking on the telephone with friends, and attending church. (Id.)

The first issue concerns the ALJ's depreciation of Plaintiff's credibility with regard to these subjective symptoms. In the Decision, the ALJ correctly outlined the credibility assessment factors which govern Social Security evaluations, as set forth in 20 C.F.R. §§ 404.1529(c) and 416.929(c), and also Social Security Ruling ("SSR") 96-7p. (Id.)

The legal standard is clear: where there is objective evidence to support subjective pain complaints, and no evidence of malingering, the ALJ must articulate clear and convincing reasons to reject (or depreciate) a plaintiff's credibility. See Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

The Court has carefully considered Plaintiff's objections to the ALJ's reliance on various credibility factors, and will discuss them. The Court is also mindful that the applicable time period for a closed period of disability and disability benefits here is August 25, 2007 through September 30, 2009. (See JS at 2.)

The ALJ summarized Plaintiff's physical medical conditions and the treatment he has received for it. Plaintiff has a lengthy history

of cardiovascular disease and also a significant treatment history. Plaintiff often required emergency room care and had surgical procedures (ablations) in both 1996 and 2005. The ALJ also noted a recent diagnosis of diabetes in December 2008, with an indication that Plaintiff he may have had diabetes since at least 2004. (AR 54, 501.) Plaintiff's primary condition is known as supraventricular tachycardia ("SVT"). Plaintiff was placed on medications after a December 2008 admission to the emergency room with indications of palpitations and shortness of breath.  The ALJ noted that just two days later, his condition had improved and he was discharged in stable condition. Subsequent imaging of the chest area in June 2009 and September 2009 "revealed normal heart size and configuration; mild ectasia and elongation of the aortic arch; normal pulmonary vasculature and lung paraenchyma; no infiltrative changes; and no pleural effusions." (AR 54.)

    The ALJ determined that Plaintiff's course of medical treatment did not "bolster" his credibility with respect to his subjective complaints. To support this conclusion, however, the ALJ noted that Plaintiff has been prescribed "appropriate medications" for his impairments, which the ALJ found weighed in Plaintiff's favor, but on the other side, the ALJ determined that the medical records indicate that the medications had been relatively effective in controlling the symptoms. The Court does note Plaintiff's counter indications in the JS that the ALJ's conclusion cannot be supported because of Plaintiff's repeated visits to the ER, but the Court must here defer to the ALJ's assessment of the medical records, which indicate that his SVT's were controlled with medication. (AR 54, citing exhibits.)

    In terms of negative credibility evaluation factors, the ALJ

4

noted that Plaintiff has not been entirely compliant in taking his prescribed medications and failed to show up for doctor's appointments on a number of occasions. (AR 54, 594.) Plaintiff objects to this conclusion because he cites evidence that his non-adherence to prescribed medication regimen can be traced to financial factors. At the hearing, Plaintiff did testify that he did not have any medical insurance, and that it costs $75 to "get in the door" for a medical examination. (AR 81.) This apparently was the first time that Plaintiff had claimed financial reasons for poor adherence to medication regimens.

While an ALJ may not exclusively rely upon contradictions between objective medical evidence and subjective symptoms, this is certainly one relevant factor, and here the ALJ documented his Decision with supportable reasoning as to that factor. Further, with regard to whether there were financial reasons for Plaintiff's failure to strictly adhere to his prescriptions, and to keep his appointments, the Court must again defer to the ALJ's rejection of financial reasons as a reason for this non-adherence. First, Plaintiff's testimony in this regard is somewhat ambiguous, indicating more that he wanted to make the medication last in order to reduce its costs. (AR 500.) Moreover, until his medical providers discovered that he had been non-compliant, there is no indication in the medical records that Plaintiff had ever complained of financial issues. Further, although the ALJ did not specifically articulate this in his Decision, he did question Plaintiff extensively at the hearing with regard to financial issues, which revealed that Plaintiff was a beneficiary of a trust left by his father. (AR 75-76.)

With regard to credibility as related to mental health treatment,

the ALJ noted that despite claims of extremely serious subjective symptoms, Plaintiff's condition was managed with relatively low doses of antidepressant medication, thus suggesting that the symptoms were not as serious as he had alleged. (AR 55.) Plaintiff cites to the contrary conclusions of Dr. Vicary, but the ALJ accorded Dr. Vicary little weight with regard to his opinion as it happens to be inconsistent with the record as a whole; that the treatment history between Plaintiff and Dr. Vicary was "quite brief and sporadic;" and that much of Dr. Vicary's opinions are conclusory without sufficient explanation of the evidence relied upon informing the opinions. (AR 55.)

The ALJ also relied upon substantial ADLs to depreciate Plaintiff's credibility. This, again, is a valid credibility factor, and is, indeed, the first factor set forth in the regulation (20 C.F.R. § 404.1529(c)).

Thus, as a whole, the Court does not have sufficient basis to conclude that the ALJ's credibility determination is not based on substantial evidence or a correct evaluation of the relevant credibility issues.

## II

**THE ALJ DID NOT IMPROPERLY EVALUATE THE OPINION OF DR. VICARY**

The ALJ summarized a June 2010 Impairment Questionnaire by psychologist Dr. Vicary, who diagnosed Plaintiff with bipolar disorder. (AR 705-712.) Dr. Vicary treated Plaintiff on a frequency of once every two to four months between December 2008 and May 2010. (AR 705.) The ALJ depreciated Dr. Vicary's opinions for several reasons. First, he relied upon regulations which accord controlling weight to

these types of conclusions only if they are well supported by medically accepted clinical and laboratory diagnostic techniques and are not inconsistent with other evidence in the record. (AR 56, citing 20 C.F.R. § 416.927(d)(2); SSR 96-2p.) The ALJ noted that Dr. Vicary's treating relationship with Plaintiff was quite brief and sporadic; that Dr. Vicary's own progress notes do not support such restrictive work-related limitations as Dr. Vicary assessed; and that Dr. Vicary's records, to the extent they are legible, are only cursory and general. The ALJ believed that Dr. Vicary largely relied upon his subjective report of symptoms and limitations provided by Plaintiff, accepting them uncritically as true. (AR 56.)

Plaintiff first contends that the ALJ had a duty to develop the record when faced with cursory or illegible progress notes, arguing that Plaintiff was represented by a "lay representative." (JS 17.) In fact, that is not the case. Robina Ali signed the fee agreement as a co-representative (AR 184). The Appointment of Representative indicates that she belongs to the law firm of Binder & Binder, and that she is an attorney. (AR 186.)

In depreciating Dr. Vicary's opinion because of the reasons stated in the Decision, the ALJ was following well-established law. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). With regard to further development of the record, beside the fact that Plaintiff was indeed represented by an attorney, not a lay representative, the Court here agrees with the Commissioner's contention that there is no indication of any missing information in the record which would have assisted the ALJ in reaching a different conclusion.

Plaintiff objects to the relevance of a consultative evaluation

by Dr. Gessesse, which occurred on November 7, 2009, which is outside of the closed disability period. The Commissioner contends that the record supports the ALJ's finding that Plaintiff failed repeated attempts to obtain this consultative examination. (JS at 23, citing AR 55.) The Court cannot find any such reference. But the Commissioner is correct that the examination took place only approximately five weeks after the end of the closed period, and that the consultative examiner had reviewed Plaintiff's mental health history. Finally, the ALJ did in fact give Plaintiff some benefit of the doubt in finding that he could only occasionally interact with others. For that reason, among others cited here, the Court cannot conclude that the ALJ did not properly evaluate the opinion of Dr. Vicary.

Plaintiff's third issue, which is that the ALJ erred in determining his RFC, can be quickly addressed. It is essentially a "combination of factors type of argument, which essentially reiterates the issues addressed by Plaintiff and responded to by the Court, and asserts that the combined effect of all of these factors leads to a conclusion of disability. But the Court does not consider that there is any "fragmentation" which renders the ALJ's assessment faulty. Essentially, it is a somewhat speculative argument, and certainly, not one which is capable of judicial review. Suffice it to say that the Court concludes that the ALJ properly assessed all of the evidence in the record in reaching his conclusion that Plaintiff is not disabled.

//
//
//
//
//

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: March 11, 2014                    /s/
                                         VICTOR B. KENTON
                                         UNITED STATES MAGISTRATE JUDGE